IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CR-390-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CALVIN CANADY, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

On October 7, 2025, Calvin Canady ("Canady" or "defendant") moved to withdraw his September 19, 2024 guilty plea to one count of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1) [D.E. 147]. On November 4, 2025, the United States responded in opposition [D.E. 151]. On November 5, 2025, Canady replied [D.E. 152]. On November 7, 2025, the United States filed a corrected response in opposition [D.E. 153]. On March 5, 2026, Canady moved for release pending the disposition of the motion to withdraw his guilty plea [D.E. 156]. As explained below, the court denies Canady's motion to withdraw his guilty plea and his motion for release.

I.

On December 19, 2023, a grand jury in the Eastern District of North Carolina returned an indictment charging Canady with interference with commerce by robbery and aiding and abetting (count one), using and carrying a firearm during and in relation to a crime of violence (count two), and possession of a firearm by a felon (count three). See [D.E. 1]. On February 21, 2024, Canady made his initial appearance, and the court appointed counsel to represent him. See [D.E. 10]. On

February 29, 2024, the court held Canady's detention hearing, and Canady waived his right to a detention hearing. See [D.E. 22, 23].

On September 19, 2024, the court held Canady's arraignment hearing. See [D.E. 42, 58]. During the hearing, Canady consented in writing to proceed before United States Magistrate Judge Robert T. Numbers II. See Rule 11 Tr. [D.E. 58] 5–6. Canady's counsel confirmed to Judge Numbers that Canady intended to enter a not guilty plea on counts one and two and a guilty plea on count three. See id. at 2. Canady affirmed that he was under oath and that if he answered any question falsely, he could be prosecuted for perjury or for making a false statement. See id. at 3. Judge Numbers advised Canady of his rights and the rights that he would be waiving if he pleaded guilty to count three. See id. at 9–12; Fed. R. Crim. P. 11(b)(1). Judge Numbers told Canady that the sentencing guidelines were advisory, that the court would calculate the advisory guideline range at sentencing, that the court would consider any departure or variance motions at sentencing, that the court would consider the factors under 18 U.S.C. § 3553(a) at sentencing, that the court would impose the sentence at sentencing, and that the court could impose the same sentence as if Canady pleaded not guilty and was convicted at trial. See id. at 12–14.

During the Rule 11 hearing, Canady affirmed under oath that (1) he was not under the influence of any drug, medication, or alcoholic beverage; (2) he understood the purpose of the hearing; (3) he did not need the court to read the indictment to him; (4) he had received the indictment; (5) he had discussed his case with his attorney; and (6) he was completely and fully satisfied with his attorney's legal services. See id. at 4–5, 8–9. Canady also stated that he was 27 years old, graduated from high school, and could speak and understand English. See id. at 4.

Both Canady's counsel and the Assistant United States Attorney ("AUSA") told Judge Numbers that Canady was competent to enter a plea. See id. Judge Numbers advised Canady

2

about the charge in count three, the elements of the charge in count three, the maximum and minimum penalties for count three, and the sentencing process. See id. at 5–8, 14. Canady affirmed that he understood the charge, the elements, the penalties, and the sentencing process. See id. at 8, 14. Canady also affirmed that he had discussed the charge in count three with his attorney, that he understood the charge in count three, and that he understood that if he pleaded not guilty on count three, the United States would have to prove the charge beyond a reasonable doubt. See id. at 8–10. Canady told Judge Numbers that nobody had forced or threatened him to plead guilty to count three. See id. at 9. Canady's counsel affirmed that he had conveyed plea offers from the United States to Canady and that Canady declined the plea offers. See id. at 12. The plea offers did not include count three. See id. at 3.

The AUSA summarized what the United States would prove if the matter proceeded to trial on count three. See id. at 15–16. The AUSA stated that a confidential source in Rocky Mount, North Carolina, informed the Rocky Mount Police Department that Canady was selling a stolen AR-15 rifle for $800. See id. at 15. On July 18, 2022, the Rocky Mount Police Department arranged a controlled purchase of the stolen rifle using the confidential source. See id. The source met with Canady and an accomplice inside a car driven by Canady. See id. The confidential source entered the car, and the rifle was in the rear seat. See id. When the confidential source retrieved the buy money from his pocket, Canady brandished a Smith & Wesson handgun and told the confidential source to give the money to the accomplice. See id. Canady stated, "You know what this is. Get out of the car." Id. The confidential source exited the car. See id.

Canady drove away. See id. The confidential source contacted the officers monitoring the controlled purchase, and the officers attempted a traffic stop. See id. at 15. Canady eventually crashed the car into a decorative boulder near a fast food restaurant in a parking lot. See id. at

3

15–16. After the crash, Canady and the accomplice fled on foot but officers apprehended them. See id. at 16. The accomplice had $300 of the buy money from the controlled purchase in his pocket. See id. Police recovered $480 of the buy money and the Smith & Wesson handgun from the car. See id. Police recovered the stolen AR-15 rifle from a bush near the car. See id. ATF officers later examined the handgun and rifle and determined they were manufactured outside North Carolina. See id. The AUSA also stated that on June 27, 2022, Canady pleaded guilty to possession of a firearm by a felon and was prohibited from possessing a firearm on July 18, 2022. See id.

Canady's counsel agreed that a factual basis existed for count three. See id. Judge Numbers asked Canady if he would like more time to speak with his attorney, and Canady said that he did. See id. at 16–17. Canady spoke to his attorney. See id. at 17. Judge Numbers then asked Canady if he was ready to enter a plea. See id. Canady affirmed that he was. See id. Canady pleaded not guilty to counts one and two of the indictment. See id. Judge Numbers then asked Canady how he pleaded to count three. See id. Canady responded, "Guilty." Id. Canady affirmed that he committed the crime charged in count three. See id. at 17–18. Judge Numbers then asked, "And are you pleading guilty to [c]ount [three] today of your own free will because you are, in fact, guilty?" Id. at 18. Canady responded, "Yes, sir." Id.

Judge Numbers then found that Canady freely and voluntarily entered his guilty plea to count three, that Canady was fully competent and had a full and complete understanding of the charge and the penalties on count three, and that an independent factual basis supported each element of the charge in count three. See id. Judge Numbers then accepted Canady's guilty plea to count three and his not guilty plea to counts one and two. See id.

4

On October 4, 2024, the grand jury returned a superseding indictment. See [D.E. 44]. The superseding indictment charged the same offenses in counts one and three. See id. at 1–2. On count two, the superseding indictment also charged Canady with possessing a firearm in furtherance of, and brandishing a firearm during and in relation to, a crime of violence (i.e., the robbery charge in count one). See id. On October 21, 2024, Canady waived his initial appearance on the superseding indictment. See [D.E. 47].

On March 3, 2025, Canady's trial began on counts one and two. See [D.E. 104, 127]. Before the trial, the United States produced discovery concerning payments from investigators to the confidential source for the confidential source's work as a confidential source, including for the investigation into Canady. See [D.E. 147] 4; [D.E. 153] 6–7 & n.2. During the trial, Corporal Daryl Jones ("Jones") of the Rocky Mount Police Department testified. See [D.E. 127] 3. Jones described his interactions with the confidential source, the investigation into Canady's illegal activities, and the July 18, 2022 attempted controlled purchase of the firearm. See id. at 3–35.[1] Jones testified that the confidential source told him that Canady was selling a stolen firearm. See id. at 4–5. Jones was familiar with Canady from prior investigations. See id. at 5. Jones also was familiar with the confidential source and had worked with the confidential source as a paid informant for about two years. See id. at 8.

The attempted controlled purchase occurred the same day that the confidential source told Jones about the stolen firearm. See id. at 7. On July 18, 2022, at approximately 5:00 p.m., Jones met with the confidential source, provided the confidential source with the $800 in buy money for the controlled purchase, and searched the confidential source for contraband. See id. at 4, 6–7. Jones did not prerecord the buy money because he was "crunched for time." Id. at 7. The

---

[1] The court recounts the trial evidence relevant to Canady's motion to withdraw.

confidential source left to complete the purchase from Canady. See id. at 7–8. The meeting location for the controlled purchase was on a cul-de-sac in Rocky Mount; therefore, Jones and another police officer, David Christman ("Christman") positioned themselves "around the corner" from the cul-de-sac in an unmarked police car. Id. at 8. The officers did not plan to arrest Canady on that day. See id. at 9. Their plan was to "continue the investigation about the stolen firearms and where they possibly came from." Id.

Jones saw a white Ford Fusion enter the cul-de-sac. See id. From the confidential source's audio device, Jones heard someone say, "You know what it is, get out of the car." Id. Jones and Christman saw the white Ford Fusion exit the cul-de-sac and drive down the street. See id. at 10. The confidential source called Jones and told him he was robbed. See id. Jones and Christman followed the white Ford Fusion and called for reinforcement. See id. The white Ford Fusion entered a Walmart parking lot, and officers in marked police cars turned on their lights and sirens. See id. at 10–11. The white Ford Fusion swerved into a Taco Bell parking lot. See id. at 11. The white Ford Fusion tried to exit the Taco Bell parking lot but a marked police car blocked the exit. See id. Canady was driving the white Ford Fusion and "backed over a big stone in the parking lot and a Taco Bell sign." Id.

Christman and Jones drew their weapons and approached the white Ford Fusion. See id. Jones saw Canady in the driver's seat and another male in the passenger's seat. See id. Christman and Jones ordered them to exit the car. See id. Canady and the other male then fled on foot but law enforcement apprehended them. See id. at 11–12. Jones walked back to the scene of the incident, received medical care for a laceration he suffered while chasing Canady, and went to the hospital for more treatment. See id. at 12.

6

Jones testified that "two hours or more" after the attempted controlled purchase, he spoke to the confidential source, who told him that while inside the car Canady pointed a handgun at him and robbed him of the buy money. Id. at 12; see id. at 13. After this debrief, Jones "eventually met" the confidential source to pay him for his services as a confidential source. Id. at 13.

Canady's counsel cross-examined Jones and elicited testimony about the confidential source's history of using drugs and committing crimes. See id. at 13–14, 16–17, 22, 25–30. Canady's counsel also questioned Jones about the confidential source's statements that conflicted with Jones's trial testimony. Specifically, Canady's counsel told Jones that the confidential source stated that Canady's accomplice told the confidential source the firearm was for sale, and that the confidential source testified before a grand jury that the confidential source coordinated with Jones about which rifle to purchase from Canady. See id. at 17–18. Jones testified that he did not know about either statement and that the latter statement was false. See id. Canady's counsel questioned Jones about the recovery of $780 of the $800 buy money given to the confidential source for the controlled purchase. See id. at 19. Canady's counsel also questioned Jones about the confidential source's statements that the rifle was in the back seat of the car, not the front seat. See id. at 20. Jones testified that he did not know why the recording device used during the July 18, 2022 attempted controlled purchase did not preserve the audio recording. See id. at 24. Jones also testified that he knew Canady and the confidential source had "some kind of beef." Id. at 31.

After Jones's testimony, the United States called the confidential source as a witness. The confidential source described Canady as an "old friend[]." Id. at 36. The confidential source testified that during the attempted controlled purchase in the car, Canady pointed a handgun at him and robbed him. See id. at 37. The confidential source testified that the rifle was in the front passenger side of the car. See id. at 38–39. Canady's counsel cross-examined the confidential

7

source about his criminal history, his gang affiliation, and his work in other cases as a paid informant. See id. at 41–51, 53–54, 56–57, 62, 73–74. The confidential source also testified about his history of using drugs and the payment he received for working as a confidential source during the investigation into Canady's activities. See id. at 52–59.

Christman also testified. Christman testified that he obtained a search warrant to search the car that Canady drove during the July 18, 2022 attempted controlled purchase for missing buy money. See id. at 101–05. When Canady's counsel cross-examined Christman about the search warrant, Christman testified that the information he submitted in the search warrant was "as [he] perceived it or as [he] was told." Id. at 105. Christman also testified that law enforcement never recovered $20 of the $800 buy money from the July 18, 2022 attempted controlled purchase. See id.

After the government rested, Canady called Maria Rudisill-Kelly ("Rudisill-Kelly"). See [D.E. 128] 28. Canady's counsel hired Rudisill-Kelly, a contract paralegal, to summarize the government's pretrial disclosure of payment records made by investigators from various agencies to the confidential source. See id. at 29–30. Rudisill-Kelly testified that the disclosure encompassed "hundreds of pages" of documents. Id. at 29. Rudisill Kelly testified that, in total, investigators paid the confidential source $21,016.22. See id. at 32.

On March 4, 2025, the jury returned a verdict of not guilty on counts one and two of the superseding indictment, and the court set Canady's sentencing hearing on count three. See [D.E. 107, 114]. The verdict was a general verdict, and the jury did not explain why it acquitted Canady on count one or count two.

On May 2, 2025, probation filed a draft Presentence Investigation Report ("PSR"). See [D.E. 124]. The draft calculated Canady's advisory guideline range as 140 to 175 months'

8

imprisonment. See id. at ¶ 69. On June 16, 2025, Canady filed 15 objections to the draft PSR. See [D.E. 129]; PSR [D.E. 134]. On June 30, 2025, the court set Canady's sentencing hearing for July 16, 2025. See [D.E. 136].

On July 16, 2025, the court began Canady's sentencing hearing. See [D.E. 140, 145]. The court adopted the facts as set forth in the PSR except as to matters in dispute, resolved two of Canady's objections to the PSR, and resolved in part another objection to the PSR. See [D.E. 145] 5, 34. A factual dispute arose during the sentencing hearing. The court adjourned the sentencing hearing, held the record open, and stated that it would reconvene the sentencing hearing at a later date. See id. at 34. On October 8, 2025, the court continued Canady's sentencing hearing in light of Canady's motion to withdraw his guilty plea. See [D.E. 148].

## II.

A guilty plea is "a grave and solemn act to be accepted only with care and discernment." Brady v. United States, 397 U.S. 742, 748 (1970). A valid guilty plea constitutes an admission of all material elements of a crime. See McCarthy v. United States, 394 U.S. 459, 466–67 (1969); United States v. Bowman, 348 F.3d 408, 414 (4th Cir. 2003); United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993). "[A] properly conducted Rule 11 guilty plea colloquy leaves a defendant with a very limited basis upon which to have his plea withdrawn." United States v. Nicholson, 676 F.3d 376, 384 (4th Cir. 2012) (citation omitted); see United States v. Milam, 150 F.4th 320, 327 (4th Cir. 2025), cert. denied, No. 25-6180, 2026 WL 79817 (U.S. Jan. 12, 2026). "Indeed, it raises a strong presumption that the plea is final and binding." Nicholson, 676 F.3d at 384 (cleaned up); see United States v. Mayberry, 125 F.4th 132, 141 (4th Cir. 2025), cert. denied, 145 S. Ct. 2722 (2025); United States v. Taylor-Sanders, 88 F.4th 516, 522 (4th Cir. 2023).

9

A defendant seeking to withdraw a guilty plea after the court accepts the plea, but before sentencing, must "show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B); see United States v. Smith, 157 F.4th 366, 374 (4th Cir. 2025); Mayberry, 125 F.4th at 141; United States v. Walker, 934 F.3d 375, 377 n.1 (4th Cir. 2019); Nicholson, 676 F.3d at 384–85; United States v. Benton, 523 F.3d 424, 434 (4th Cir. 2008); United States v. Battle, 499 F.3d 315, 318–22 (4th Cir. 2007); United States v. Dyess, 478 F.3d 224, 237 (4th Cir. 2007); Bowman, 348 F.3d at 413–17; United States v. Ubakanma, 215 F.3d 421, 424 (4th Cir. 2000); United States v. Sparks, 67 F.3d 1145, 1153–54 (4th Cir. 1995); United States v. Lambert, 994 F.2d 1088, 1093 (4th Cir. 1993); United States v. Lambey, 974 F.2d 1389, 1394–96 (4th Cir. 1992) (en banc); United States v. McHan, 920 F.2d 244, 247 (4th Cir. 1990); United States v. Pitino, 887 F.2d 42, 46 (4th Cir. 1989); United States v. DeFreitas, 865 F.2d 80, 82 (4th Cir. 1989). "The most important consideration in resolving a motion to withdraw a guilty plea is an evaluation of the Rule 11 colloquy at which the guilty plea was accepted." Bowman, 348 F.3d at 414. "The standard for withdrawing a guilty plea is stringent because society has a strong interest in the finality of guilty pleas, and allowing withdrawal of pleas not only undermines confidence in the integrity of our judicial procedures, but also increases the volume of judicial work, and delays and impairs the orderly administration of justice." United States v. Rose, 891 F.3d 82, 85 (2d Cir. 2018) (citation omitted).

In analyzing whether a defendant has met his burden of proof, the court must consider six factors: (1) whether the defendant provided credible evidence that his plea was not knowing or voluntary; (2) whether the defendant credibly asserted his legal innocence; (3) whether there was a delay between entering the plea and moving for withdrawal; (4) whether the defendant had the close assistance of competent counsel; (5) whether withdrawal will prejudice the government; and

10

(6) whether withdrawal will inconvenience the court and waste judicial resources. See Smith, 157 F.4th at 374–75; Nicholson, 676 F.3d at 384–85; United States v. Moore, 931 F.2d 245, 248 (4th Cir. 1991). "The first, second, and fourth factors are generally the most significant." United States v. Greene, No. 24-4140, 2026 WL 579477, at *1 (4th Cir. Mar. 2, 2026) (per curiam) (unpublished); see Sparks, 67 F.3d at 1154.

A.

As for the first factor, Canady fails to show that his guilty plea was not knowing and voluntary. Judge Numbers conducted a thorough Rule 11 proceeding and ensured that Canady was competent. Judge Numbers also ensured that Canady understood all that Federal Rule of Criminal Procedure 11(b)(1)(A)–(M) requires and thereby ensured that the plea was knowing. Judge Numbers also ensured that Canady's plea was voluntary and did not result from force, threats, or promises. See Fed. R. Crim. P. 11(b)(2). Thus, the first factor does not favor permitting withdrawal.

In opposition, Canady does not argue that his Rule 11 hearing was conducted improperly. Instead, Canady argues that prosecutorial and police misconduct rendered his guilty plea involuntary. See [D.E. 147] 9–14. Canady also argues that his attorney coerced him into pleading guilty to count three. See id. at 2–3.

The court rejects Canady's arguments about prosecutorial and police misconduct. A guilty plea is voluntarily entered even if a defendant lacks "complete knowledge of the relevant circumstances." United States v. Ruiz, 536 U.S. 622, 630 (2002). Moreover, a court may "accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor." Id.; see, e.g., Brady, 397 U.S. at 757 ("[The Constitution does not require that a defendant] be permitted to disown his solemn

11

admissions in open court that he committed the act with which he is charged simply because it later develops that the state would have had a weaker case than the defendant had thought or that the maximum penalty then assumed applicable has been held inapplicable in subsequent judicial decisions."). It suffices that the defendant "fully understands the nature of the right and how it would likely apply in general in the circumstances—even though the defendant may not know the specific detailed consequences of invoking it." Ruiz, 536 U.S. at 629.

In Brady, the Supreme Court recognized that "misrepresentation or other impermissible conduct by state agents" can render a guilty plea involuntary. 397 U.S. at 757; see Ferrara v. United States, 456 F.3d 278, 291 (1st Cir. 2006) ("Under limited circumstances, . . . the prosecution's failure to disclose evidence may be sufficiently outrageous to constitute the sort of impermissible conduct that is needed to ground a challenge to the validity of a guilty plea."); Matthew v. Johnson, 201 F.3d 353, 364 n.15 (5th Cir. 2000). The Fourth Circuit has applied this exception to "gross police misconduct," United States v. Fisher, 711 F.3d 460, 466 (4th Cir. 2013), and United States v. Garrett, 141 F.4th 96, 104–08 (4th Cir. 2025), and to prosecutorial misconduct during the pre-plea process that "evince[s] a lack of candor." Garrett, 141 F.4th at 108. If a defendant demonstrates that such misconduct occurred, the defendant must also show that the misconduct was material to the defendant's decision to plead guilty. Governmental misconduct is material when there is an objectively "reasonable probability that, but for the misconduct, [the defendant] would not have pled guilty and would have insisted on going to trial." Id. at 111 (quotation omitted); Fisher, 711 F.3d at 467.

In Fisher, the Fourth Circuit found that police misconduct rendered a defendant's guilty plea involuntary. See 711 F.3d at 464–70. Investigators executed a search warrant on the defendant's residence and found crack cocaine and a firearm. See id. at 463. The defendant then

12

pleaded guilty to possession of a firearm by a felon. See id. Over a year after the defendant entered a guilty plea, the police officer who obtained the search warrant for the defendant's residence pleaded guilty to fraud and theft offenses. See id. The officer admitted that the search warrant affidavit contained false statements attributed to a confidential informant with "no connection to the case" because "another individual was the real informant." Id. The Fourth Circuit found that the officer's false attribution of statements to the confidential source was an affirmative government misrepresentation which struck "at the integrity of the prosecution as a whole" because the evidence recovered from the defendant's residence formed the basis for the charges against him. Id. at 466. The Fourth Circuit also found that it was reasonably probable that the defendant would not have entered a guilty plea to possession of a firearm by a felon with knowledge of the misconduct, because it may have led to a successful suppression motion and impeachment of the police officer's testimony at trial. See id. at 467–69.

In Garrett, the Fourth Circuit found that police and prosecutorial misconduct rendered the defendant's guilty plea involuntary. The Fourth Circuit found that law enforcement omitted or misrepresented facts in obtaining warrants to search the defendant's property and monitor his location. See 141 F.4th at 105–07. The Fourth Circuit held that "every weakness in the case against [the defendant] was withheld from the warrant judge." Id. at 107. The Fourth Circuit also found that the prosecution represented to the district court in briefing that only one confidential source took part in the investigation of the defendant, when there were two confidential sources involved. See id. at 108–10. And the Fourth Circuit found that the United States's disclosure of 775 pages of discovery approximately six weeks before the defendant pleaded guilty "combined with its repeated representations that only one [confidential informant] was used amount[ed] to impermissible prosecutorial conduct." Id. at 108; see id. at 109. Thus, the Fourth Circuit found

13

that "the uncertainty that began at the warrant level was cemented in the prosecution's briefing to the district court, and that defect . . . caus[ed] both [the defendant] and the district court to accept a flawed foundation of the case." Id. at 109. The Fourth Circuit also held that the misconduct was material because a reasonable defendant would have filed a suppression motion, attempted to negotiate a better plea agreement, and, regardless of the suppression motion's resolution, been in a better position for trial. See id. at 111.

This case is not remotely Garrett or Fisher. The documents disclosed to Canady after pleading guilty to count three but before trial on counts one and two contained impeachment information about law enforcement's payments to the confidential source. See [D.E. 128] 29. Canady was not entitled to receive this information before pleading guilty. See Ruiz, 536 U.S. at 629 (holding that the Constitution does not require "preguilty plea disclosure of impeachment information"); United States v. Moussaoui, 591 F.3d 263, 285 (4th Cir. 2010) ("The Brady[v. Maryland] right, however, is a trial right."). Moreover, Canady's sworn admission to committing count three during the Rule 11 hearing "almost completely eliminate[s]" the concerns underlying the pretrial disclosure of impeachment information. Moussaoui, 591 F.3d at 285; see Ruiz, 536 U.S. at 628. The factual basis of Canady's guilty plea and the knowing and voluntary nature of the guilty plea to count three then completely eliminate the concerns underlying the pretrial disclosure of impeachment information, particularly given that the factual basis referenced the confidential source. See Rule 11 Tr. 15–16.

In opposition, Canady cites Garrett and argues that his guilty plea was involuntary because he did not have impeachment information about law enforcement's payments to the confidential source. In Garrett, however, the Fourth Circuit explained that the misconduct must "amount to deceit or lack of candor that materially affects the defendant's understanding of the case against

14

him" to render a guilty plea involuntary. 141 F.4th at 108. Canady does not credibly contend that the impeachment information he received after pleading guilty materially affected his understanding of the case against him on count three. Cf. Ruiz, 536 U.S. at 630 ("It is particularly difficult to characterize impeachment information as critical information of which the defendant must always be aware prior to pleading guilty given the random way in which such information may, or may not, help a particular defendant. The degree of help that impeachment information can provide will depend upon the defendant's own independent knowledge of the prosecution's potential case—a matter that the Constitution does not require prosecutors to disclose."). Confidential sources do not work for free. They work for money, to reduce or eliminate charges, or both. Given the Rule 11 hearing and Canady's and his counsel's extensive experience with the criminal justice system, they cannot credibly claim ignorance of these facts. Because Canady has not made the showing required under Garrett or Fisher, Ruiz controls. See id.

Canady also does not cite evidence of police or prosecutorial misconduct that affected the integrity of the prosecution or otherwise rendered his guilty plea involuntary. In opposition, Canady contends that Jones and the confidential source did not testify credibly at trial, and that the investigation into Canady's illegal activity involved a gang-affiliated and paid informant who used drugs, had a criminal history, and testified inconsistently at trial. See [D.E. 147] 4–9. Even if the challenged trial testimony of Jones and the confidential source raised credibility issues, such testimony is not police or prosecutorial misconduct that "strikes at the integrity of the prosecution as a whole." Fisher, 711 F.3d at 466 (citation omitted). Indeed, making credibility arguments about the testimony of trial witnesses happens in every trial. Here, Canady fails to show police or prosecutorial misconduct that rendered his guilty plea involuntary.

Canady also argues that his counsel coerced him into pleading guilty. Canady's sworn statements during the Rule 11 hearing defeat this argument. See Rule 11 Tr. 9; e.g., Taylor-Sanders, 88 F.4th at 522; United States v. Lemaster, 403 F.3d 216, 221–22 (4th Cir. 2005). Likewise, Canady's mother's unsworn statements about his intent to plead not guilty to count three conflict with Canady's sworn statements during the Rule 11 hearing and are entitled to no weight. Compare [D.E. 147] 3 ("From the very beginning Calvin told me his pleas for all [three] counts would be not guilty."), with Rule 11 Tr. 9, 17–18; see Taylor-Sanders, 88 F.4th at 522; Lemaster, 403 F.3d at 221–23; United States v. Odom, No. 5:20-CR-149, 2021 WL 3729956, at *7–8 (E.D.N.C. Aug. 23, 2021) (unpublished), aff'd, No. 21-4685, 2023 WL 34188 (4th Cir. Jan. 4, 2023) (per curiam) (unpublished). Thus, the court rejects Canady's coercion argument.

Although Canady apparently concluded after his trial on counts one and two that he may have "misapprehended the quality of the [government]'s case" on count three, he has not made the required showing on the first factor to demonstrate that his guilty plea to count three was not knowing and voluntary. Brady, 397 U.S. at 757. Thus, the first factor does not favor permitting withdrawal.

## B.

As for the second factor, Canady has not credibly asserted his legal innocence on count three. Canady's impression that, after succeeding at trial on counts one and two, he "might obtain a not guilty verdict [on count three] does not establish 'legal innocence' or provide an adequate reason to disturb his guilty plea." United States v. Albarran, 943 F.3d 106, 123 (2d Cir. 2019). Canady's self-serving assertions in his motion to withdraw are entitled to no weight given his sworn statement at the Rule 11 hearing that he did in fact commit the crime of possession of a firearm by a felon. See Rule 11 Tr. 17–18.

16

The trial evidence established that Canady, a felon, constructively possessed the rifle that he attempted to sell to the confidential source and a handgun recovered from the car Canady drove, and that he possessed the firearms in or affecting interstate commerce. See [D.E. 127] 83–92; [D.E. 128] 3–5; e.g., Henderson v. United States, 575 U.S. 622, 626 (2015); United States v. Jones, 166 F.4th 428, 435–36 (4th Cir. 2026); United States v. Robertson, 68 F.4th 855, 862 (4th Cir. 2023); Albarran, 943 F.3d at 118–19. Thus, Canady has not credibly asserted his legal innocence.

C.

As for the third factor, Canady delayed over 12 months between pleading guilty to count three and moving to withdraw his guilty plea. On September 19, 2024, Canady pleaded guilty. See [D.E. 42]. On October 7, 2025, Canady moved to withdraw his guilty plea. See [D.E. 147]. This long delay does not favor permitting withdrawal. See Smith, 157 F.4th at 374 (six-and-a-half month delay did not favor permitting withdrawal); Nicholson, 676 F.3d at 384 (same for two-month delay); Sparks, 67 F.3d at 1150–54 (same for eight-month delay); Moore, 931 F.2d at 248 (same for six-week delay); United States v. Odom, No. 5:20-CR-149, 2021 WL 3729956, at *9 (E.D.N.C. Aug. 23, 2021) (unpublished) (same for eight-month delay), aff'd, No. 21-4685, 2023 WL 34188 (4th Cir. Jan. 4, 2023) (per curiam) (unpublished).

D.

As for the fourth factor, Canady concedes that he received the close assistance of competent counsel. See [D.E. 147] 15. Thus, the fourth factor does not favor withdrawal.

E.

As for the fifth factor, withdrawal would prejudice the United States. Canady is a validated member of the Crips street gang with a lengthy criminal history involving firearms and illegal drugs. See [D.E. 154] 2. During the Rule 11 hearing on September 19, 2024, Canady admitted

17

under oath that he committed the crime charged in count three of the indictment. Over 12 months after pleading guilty, receiving favorable trial verdicts on counts one and two, and obtaining numerous continuances of his sentencing hearing, Canady wants to restart the clock, withdraw his guilty plea, and go to trial on count three. To permit Canady to do so would prejudice the United States.

F.

As for the sixth factor, withdrawal would inconvenience the court and waste judicial resources. See Smith, 157 F.4th at 375; Nicholson, 676 F.3d at 384–85; Bowman, 348 F.3d at 417. Judge Numbers conducted a thorough Rule 11 proceeding, and Canady told the truth when he pleaded guilty during the Rule 11 hearing on September 19, 2024. Canady moved to withdraw his guilty plea over 12 months after pleading guilty and eventually succeeding at trial on counts one and two of the superseding indictment. This court originally scheduled the sentencing hearing in this case for the June 9, 2025 term of court but repeatedly has had to continue it. See [D.E. 107, 126, 136, 144, 148]. This court has over 1,700 cases. Canady is not entitled to the Rule 11 and trial "do over" that he now requests. To permit Canady to withdraw his guilty plea and go to trial on count three would inconvenience the court, waste judicial resources, and ignore that Canady's guilty plea was "a grave and solemn act." United States v. Hyde, 520 U.S. 670, 677 (1997) (cleaned up); Brady, 397 U.S. at 742; Smith, 157 F.4th at 371; Milam, 150 F.4th at 327; Fisher, 711 F.3d at 465.

III.

In sum, the court DENIES defendant's motion to withdraw his guilty plea [D.E. 147] and DENIES defendant's motion for release from custody [D.E. 156]. Defendant faces a lengthy sentence and remains a serious risk of flight and a danger to the community. See 18 U.S.C.

18

§ 3143(a). The clerk SHALL set Canady's sentencing hearing for a criminal term of court in April 2026.

SO ORDERED. This 26 day of March, 2026.

JAMES C. DEVER III
United States District Judge

19